**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| _____ ) | |
| RAYMOND NADEAU, ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| v. ) | Docket No:_____ |
| ) | |
| ) | **JURY TRIAL** |
| ) | **DEMANDED** |
| BENDER PLUMBING SUPPLY OF ) | |
| HARTFORD, LLC ) | |
| ) | |
| ) | |
| Defendants ) | |
| _____) | |

## COMPLAINT AND JURY DEMAND

### Parties

1.      Plaintiff Raymond Nadeau ("Mr. Nadeau" or "Plaintiff") is a male resident of the

State of Connecticut, residing at 82 Federal Street, West Hartford, CT 06110.

2.      Defendant Bender Plumbing Supply of Hartford, LLC (the "Company") is a

Connecticut limited liability company with its principal office located at 580 Grand Avenue,

New Haven, CT 06511.

### Jurisdiction and Venue

3.      The court has subject matter jurisdiction under 28 U.S.C. § 1331 because the

Plaintiff has brought federal claims, including claims under the Age Discrimination in

Employment Act ("ADEA") 29 U.S.C. §§ 621 *et seq.*, the Americans with Disability Act

("ADA") 42 U.S.C. §§ 1201 *et seq.*, and the Family and Medical Leave Act ("FMLA") 29

U.S.C. §2615. The court may exercise supplemental jurisdiction over Mr. Nadeau's state law claims. 28 U.S.C. §1367.

4.      Venue is appropriate in the District of Connecticut as the acts or omissions giving rise to the claims in this Complaint occurred in Connecticut.  Indeed, Mr. Nadeau worked in Connecticut during his entire employment and was likewise fired in Connecticut.

5.      This court has personal jurisdiction over the Company because it is a resident of the state of Connecticut because its principal place of business is in Connecticut and it is incorporated in Connecticut. Additionally, the court has personal jurisdiction over the Company because it engaged in and transacted business in the State of Connecticut, including by managing and/or operating a business in the State of Connecticut (located at 580 Grand Avenue, New Haven, CT 06511), and/or by employing Mr. Nadeau in the State of Connecticut, and Mr. Nadeau's causes of action stem largely from the Company's business transactions within the State of Connecticut. Indeed, Mr. Nadeau was employed by the Company in Connecticut, worked in Connecticut during his entire employment and Mr. Nadeau was managed and terminated by the Company in the State of Connecticut.

## Statement of Facts

6.      Mr. Nadeau is a 59-year-old man who was born in 1962.

7.      On or around August 5, 2015, Mr. Nadeau began employment with the Company as a counterperson in Hartford, CT.

8.      At all relevant times, the Company employed 15 or more employees for 20 or more calendar weeks during the preceding 12 months.

9.      During all relevant times, the Company was engaged in interstate commerce or in an industry or activity affecting interstate commerce.

10.     Likewise, at all relevant times, the Company employed 50 or more employees during 20 or more calendar weeks in the current or preceding calendar year.

11.     Additionally, the Company employed 50 or more employees within a 75-mile radius of Mr. Nadeau's worksite.

12.     Notably, other Bender Plumbing Supply affiliates also constituted integrated employers with regard to the Company under applicable FMLA rules.

13.     Accordingly, at all relevant times, the Company was a covered employer under the FMLA. Additionally, the Company was an employer as defined by state and federal anti-discrimination laws, including Conn. Gen. Stat. §46(a)-60, Age Discrimination in Employment Act ("ADEA"), and the Americans with Disabilities Act (ADA).

14.     At all relevant times, Mr. Nadeau was a qualified employee, and his job performance was satisfactory.

15.     Indeed, through Mr. Nadeau's formal evaluations, the Company made clear that Mr. Nadeau either met or exceeded expectations in all performance reviews throughout his employment. Indeed, he received ratings of meets expectations or exceeds expectations for his performance reviews for 2016 through 2019.

16.     Throughout his employment, Sales Manager Lou Dimeo ("Dimeo") was one of Mr. Nadeau's managers. Indeed, Dimeo had the power to hire and fire Mr. Nadeau, supervised and controlled Mr. Nadeau's conditions of employment including his work schedule, played a role in determining Mr. Nadeau's rate and method of payment, and/or played a role in maintaining Mr. Nadeau's employment records.

17.     Dimeo is over 10 years younger than Mr. Nadeau.

18.     At all relevant times, Mr. Nadeau suffered from diverticulitis, minor depressive

disorder and generalized anxiety disorder.

19.     Mr. Nadeau's diverticulitis is a physical impairment that substantially limits one

or more of his major life activities, including, but not limited to, eating and digesting.

Additionally, Mr. Nadeau's diverticulitis also substantially limited one or more major bodily

functions, including, but not limited to, Mr. Nadeau's digestive function.  Accordingly, at all

relevant times, Mr. Nadeau was disabled under the Americans with Disabilities Act ("ADA")

and Connecticut law.

20.     Mr. Nadeau's minor depressive disorder is a physical impairment that

substantially limits one or more of his major life activities, including, but not limited to, social

interactions, maintaining his energy levels and his ability to control his emotions. Additionally,

Mr. Nadeau's minor depressive disorder also substantially limited one or more major bodily

functions, including, but not limited to, Mr. Nadeau's neurological and emotional functions.

Accordingly, at all relevant times, Mr. Nadeau was further disabled under the ADA and

Connecticut law.

21.     Mr. Nadeau's generalized anxiety disorder is a physical impairment that

substantially limits one or more of his major life activities, including, but not limited to, social

interactions, maintaining his energy levels and his ability to control his emotions. Additionally,

Mr. Nadeau's generalized anxiety disorder also substantially limited one or more major bodily

functions, including, but not limited to, Mr. Nadeau's neurological and emotional functions.

Accordingly, at all relevant times, Mr. Nadeau was further disabled under the ADA and

Connecticut law.

22.     Mr. Nadeau also has a son who suffers from intellectual disabilities and cerebral palsy, both serious health conditions requiring continuing care, as defined under the FMLA.

23.     Shortly after Mr. Nadeau's hire, Mr. Nadeau revealed his son's disabilities to Dimeo.

24.     A few weeks later, Mr. Nadeau disclosed his minor depressive disorder, generalized anxiety disorder and diverticulitis disabilities to Dimeo and requested the reasonable accommodation of time off work in the future to receive treatment for these disabilities if he were to have flare-ups.

25.     Dimeo seemed disgusted with Mr. Nadeau when he revealed his disabilities and made this reasonable accommodation request, denied the request, and refused to engage in an interactive dialogue with Mr. Nadeau regarding this request.

26.     After commencing his employment, Mr. Nadeau revealed his age, which, upon information and belief, had not been previously known by Dimeo.

27.     Mr. Nadeau then began to be treated in a negative manner due to his age.

28.     Indeed, Dimeo would state make harassing age-related statements to Mr. Nadeau on a near daily basis, including commenting that Mr. Nadeau was "so old", saying to him "you're so old, you will never find it," and saying "get out of my way, old man, let me get it" in a derogatory and mocking tone.

29.     Sometimes, Dimeo would time his harassing age-related remarks so that he could loudly proclaim them in front of younger employees.

30.     Indeed, Mr. Nadeau was one of the oldest employees within the Company, as, upon information and belief, the average age of Company employees was around 35 years old, over 20 years younger than Mr. Nadeau.

31.     Dimeo's discriminatory comments about Mr. Nadeau's age publicly shamed Mr. Nadeau in front of younger employees and made clear that the Company was biased against him due to his age.

32.     Conversely, Dimeo did not mock or harass younger, non-disabled employees in the same manner.

33.     After being mocked and harassed by Dimeo for several months, Mr. Nadeau raised protected concerns to Dimeo that he (Dimeo) was improperly treating him (Mr. Nadeau) in a discriminatory manner, seemingly due to his age or disabilities. Mr. Nadeau asked Dimeo to stop harassing and demeaning him in front of the younger staff.

34.     Dimeo dismissed Mr. Nadeau's protected concerns, and continued to treat Mr. Nadeau in a worse manner than other younger, non-disabled employees.

35.     For example, Dimeo would consistently help younger, non-disabled employees when their counters were busy and would assist them with finding parts for customers, the main responsibilities of the counterperson position.

36.     Dimeo would consistently ignore Mr. Nadeau when his counter was busy and would generally not assist him with finding parts for customers.

37.     Indeed, on a day that was particularly busy due to inventory being conducted in the store, Mr. Nadeau asked for help from Dimeo at his counter (which was busy), only to have Dimeo tell him, in front of other younger, non-disabled employees, that he (Mr. Nadeau) was being "left alone because you're old."

38.     Mr. Nadeau raised protected concerns to Dimeo that this remark was overtly discriminatory and harassing and again asked Dimeo to cease these discriminatory comments.

39.     Dimeo dismissed Mr. Nadeau's protected concerns, displayed clear annoyance that Mr. Nadeau had raised such concerns, and walked away from Mr. Nadeau.

40.     Shortly thereafter, Dimeo began to have weekly meetings, only including younger, non-disabled employees, and specifically excluding the older, disabled Mr. Nadeau.

41.     Indeed, Dimeo would direct Mr. Nadeau to work the counter during these daily meetings, despite the fact the storefront was not open during the time of the daily meeting.

42.     Mr. Nadeau raised protected concerns to Dimeo that he was specifically being excluded from these weekly meetings due to his age or his disabilities.

43.     Dimeo dismissed Mr. Nadeau's protected concerns and continued to exclude him from weekly meetings.

44.     From at least August 5, 2016 through the end of Mr. Nadeau's employment, Mr. Nadeau had worked for the Company for at least 12 months and in excess of 1,250 hours during each preceding 12-month period, and as such was eligible for FMLA leave.

45.     In or around August 2018, Mr. Nadeau needed three days off in order to take care of his son, as he was undergoing treatment for his cerebral palsy.

46.     As such, Mr. Nadeau requested from Dimeo leave in order to take care of his son's serious health condition under the FMLA.  Mr. Nadeau noted that he might need to take further leave off in the future if his son required further medical treatment.

47.     Dimeo grew angry with Mr. Nadeau when he requested this time off, stating that Mr. Nadeau "better watch out" if he were to take more days off from work.

48.     As such, Dimeo intentionally put Mr. Nadeau in fear that if he were to utilize FMLA leave while employed by the Company, he would be in danger of retaliatory discipline or termination.

49.     As such, even though Mr. Nadeau wanted and needed to use additional FMLA time, due to fear of retaliation, he did not use as much time as was justified, and only made scarce use of FMLA time for his son.  Due to the threat of retaliation, if he took time off under the FMLA, Mr. Nadeau asked for permission for his son to sometimes be at work with him so that he could make sure he was safe and not at risk of harm due to his disabilities.

50.     At first, the Company seemingly granted this request, and his son was permitted to periodically be at work so that Mr. Nadeau could ensure that he was safe and cared for.

51.     However, in or around March 2019, while Mr. Nadeau's son was at the counter with Mr. Nadeau, Dimeo came up to Mr. Nadeau's son, screaming at him that he needed to leave the Company's storefront immediately.

52.     Mr. Nadeau was shocked, as Mr. Nadeau's son had regularly come to the store for two hours in the morning for years.

53.     As such, this outburst by Dimeo seemed to be a discriminatory and retaliatory act due to Mr. Nadeau's age, disabilities, or Mr. Nadeau's use (even if only sporadic) of FMLA leave to take care of his son's serious health conditions.

54.     Mr. Nadeau raised protected concerns that this outburst by Dimeo was seemingly discriminatory and retaliatory.

55.     Dimeo again dismissed Mr. Nadeau's protected concerns.

56.     On or around July 11, 2019, Mr. Nadeau again requested three days off from work to take his son to the doctor for treatment of his disabilities and to care for his own serious health conditions.

57.     As  such, Mr. Nadeau called Dimeo and requested FMLA leave so that his son could receive treatment for his disabilities and so that Mr. Nadeau could receive treatment for his

disabilities. Mr. Nadeau made clear that this was part of his ongoing need for periodic intermittent leave related to his son's and his own serious health conditions.

58.     Dimeo again grew angry with Mr. Nadeau, despite the fact Mr. Nadeau had not used FMLA leave during the past 6-month period, stating that Mr. Nadeau needed to cease taking time off from work to care for his son.

59.     Then, on or around September 17, 2019, Mr. Nadeau became very sick while at work due to his diverticulitis disability, experiencing severe nausea and vomiting uncontrollably.

60.     As Mr. Nadeau could not remain at work and needed to receive medical treatment for his disability, Mr. Nadeau requested the reasonable accommodation of taking the rest of the day off so that he could receive treatment for his disabilities.

61.     At this request, Dimeo scoffed and rolled his eyes at Mr. Nadeau, stating "well, are you coming back?" in a derisive and derogatory tone, clearly displaying Dimeo's annoyance and anger at Mr. Nadeau's leave request and seeming to imply if Mr. Nadeau were to take leave that Mr. Nadeau would be terminated.

62.     Mr. Nadeau went and received treatment from his doctor for this flare-up of his diverticulitis disability, but the severe nausea and vomiting persisted for three days.

63.     As such, Mr. Nadeau called Dimeo and requested the reasonable accommodation of time off from work each day as the vomiting and nausea from his diverticulitis disability had not ceased, eventually requesting leave protected under the FMLA when Mr. Nadeau's doctor informed him that he (Mr. Nadeau) would need to take time off from work for testing and treatment.

64.     The Company seemingly granted Mr. Nadeau's request for leave protected under the FMLA.

65.     On or around September 22, 2019, while awaiting test results, Mr. Nadeau went to the emergency room to get treatment for his diverticulitis disability, as his disability-related nausea and vomiting still had not ceased, and indeed, had worsened.

66.     Mr. Nadeau was able to get the correct treatment for his disabilities and was able to recover to the point where he could return to work.

67.     As such, two days later, on or around September 24, 2019, Mr. Nadeau returned to work from FMLA leave, providing Dimeo with a note that verified his treatment for his disabilities and his need for leave.

68.     Dimeo grunted at Mr. Nadeau.

69.      Only a very brief time into Mr. Nadeau's shift, Dimeo unexpectedly called Mr. Nadeau into his office and informed him that he was terminated. Mr. Nadeau was therefore involuntarily terminated from the Company on September 24, 2019.

70.     Indeed, Mr. Nadeau was never restored to his position, certainly not in any meaningful way, before he was summarily terminated.

71.     Mr. Nadeau was shocked at his sudden termination, as he had returned from FMLA leave for his disabilities only a brief time earlier and had repeatedly been treated in a negative and discriminatory manner when he utilized FMLA leave for his disabilities or to care for his son's serious health conditions.

72.     Indeed, Dimeo regularly allowed younger, non-disabled employees to take time off from work of a longer duration than Mr. Nadeau, and such younger non-disabled employees were not disciplined, much less terminated, for doing so.

73.     As such, it was clear that Dimeo terminated Mr. Nadeau due to his disabilities, age, and/or in retaliation for taking FMLA leave for his disabilities and/or for his son's serious health conditions.

74.     Indeed, Mr. Nadeau had years of good performance while working at the Company, and had never been issued any disciplinary action before this termination.

75.     The Company had a practice and policy of progressive discipline, which it failed to follow with regard to Mr. Nadeau. In contrast, younger and non-disabled employees were routinely provided with multiple steps of progressive discipline before being terminated.

76.     Upon information and belief, Mr. Nadeau was replaced by a younger, non-disabled employee.

77.     Throughout the employment of Mr. Nadeau, the ongoing harassing and discriminatory actions of the Company constituted a continuing policy, practice, and pattern of harassing conduct.

78.     On or around February 19, 2020,  Mr. Nadeau timely filed a Charge of Discrimination with the Connecticut Commission on Human Rights and Opportunities ("CHRO"), which was cross-filed with the United States Equal Employment Opportunity Commission ("EEOC").

79.     On or around November 11, 2021, Mr. Nadeau informed the CHRO of his intent to pursue his claims in court and accordingly requested that the CHRO release jurisdiction.

80.     On or around November 17, 2021, the CHRO issued Mr. Nadeau a release of jurisdiction to allow her to pursue his claims in court.

81.     On or around November 30, 2021, the EEOC provided Mr. Nadeau with a Notice of a Right to Sue.

82.     This lawsuit is timely filed.

**COUNT I**

**(Interference with, and Retaliation for, Exercising Rights under the Family and Medical Leave Act – 29 U.S.C. §2615)**

**Plaintiff v. Defendant**

83.     The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

84.     During all relevant times, the Company was engaged in an industry affecting commerce and employed 50 or more employees for 20 or more calendar work weeks in each current and/or preceding calendar year.  Additionally, the other affiliated entities, including Bender Plumbing Supply facilities, constituted integrated employers with regard to the Company.

85.     As such, at all relevant times, the Company was an employer under the FMLA.

86.     At all relevant times, the Company employed 50 or more employees within 75 miles of Mr. Nadeau's worksite.

87.     Accordingly, the Company was an employer covered by the FMLA.

88.     At all relevant times (from August 5, 2016 onward), Mr. Nadeau had worked for the Company for 12 or more months and had worked in excess of 1,250 hours within the past 12-month period.

89.     As such, from August 5, 2016 onward, Mr. Nadeau was an eligible employee under the FMLA.

90.     Mr. Nadeau suffered from one or more serious health conditions which required continuing care, including, but not limited to, diverticulitis, minor depressive disorder and generalized anxiety disorder, and received continuing care for these conditions.

91.     Additionally, Mr. Nadeau's son suffered from one or more serious health conditions which required continuing care, including, but not limited to, cerebral palsy and learning disabilities and received continuing care for these conditions.

92.     Mr. Nadeau was entitled to FMLA leave.

93.     Mr. Nadeau sought to exercise his rights under the FMLA, including by requesting and utilizing one or more leaves protected under the FMLA.

94.     Mr. Nadeau timely notified the Defendant that he would need FMLA leave.

95.     Specifically, Mr. Nadeau sought to exercise continuous and intermittent leave in order to receive treatment for his diverticulitis disability and for his son's cerebral palsy.

96.     Defendant, including by and through its agents, interfered with Mr. Nadeau's rights under the FMLA by not restoring Mr. Nadeau to the same or equivalent position when he sought to return to work.

97.     In the alternative, the Company's supposed restoration of Mr. Nadeau to the same or equivalent position when he sought to return to work was so short and *de minimus* that Mr. Nadeau could not have been considered to have been reinstated to the same or equivalent position, as Mr. Nadeau was terminated only a brief time after he attempted to return to work and on the same day that he attempted to return to work.

98.     Defendant, including by and through its agents, retaliated and/or discriminated against Mr. Nadeau for requesting and/or utilizing FMLA leave by subjecting Mr. Nadeau to adverse actions, including, but not limited to, subjecting Mr. Nadeau to a harassing and

otherwise hostile work environment including discriminatory comments and disparate treatment by excluding Mr. Nadeau from meetings and not giving him aid when he asked, by refusing to reinstate Mr. Nadeau to his prior position at the end of his FMLA leave, and/or terminating Mr. Nadeau's employment.

99.     Defendant's actions were willful and undertaken in bad faith.

100.     As a direct and proximate result of the Defendants' violation of the FMLA, Mr. Nadeau has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, other monetary harms, loss of earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

101.     Mr. Nadeau seeks all damages to which he is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), other monetary damages, compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), injury to reputation, diminished earning capacity, liquidated (i.e. double) damages, interest, attorneys' fees, and costs.

**COUNT II**

**(Disability Discrimination and Failure to Accommodate in Violation of the Americans With Disabilities Act, 42 U.S.C. §§12101, et seq.)**

**Plaintiff v. Defendant**

102.     The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

103.    Mr. Nadeau's diverticulitis is a physical impairment that substantially limits one or more of his major life activities, including, but not limited to, eating and digesting. Additionally, Mr. Nadeau's diverticulitis also substantially limited one or more major bodily functions, including, but not limited to, Mr. Nadeau's digestive function.   Accordingly, at all relevant times, Mr. Nadeau was disabled under the Americans with Disabilities Act ("ADA").

104.    Mr. Nadeau's minor depressive disorder is a physical impairment that substantially limits one or more of his major life activities, including, but not limited to, social interactions, maintaining his energy levels and his ability to control his emotions. Additionally, Mr. Nadeau's minor depressive disorder also substantially limited one or more major bodily functions, including, but not limited to, Mr. Nadeau's neurological and emotional functions. Accordingly, at all relevant times, Mr. Nadeau was further disabled under the ADA.

105.    Mr. Nadeau's generalized anxiety disorder is a physical impairment that substantially limits one or more of his major life activities, including, but not limited to, social interactions, maintaining his energy levels and his ability to control his emotions. Additionally, Mr. Nadeau's generalized anxiety disorder also substantially limited one or more major bodily functions, including, but not limited to, Mr. Nadeau's neurological and emotional functions. Accordingly, at all relevant times, Mr. Nadeau was further disabled under the ADA.

106.    At all relevant times, the Company was an employer as defined by federal anti-discrimination laws, including the Americans with Disabilities Act, employing 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year.

107.     At all relevant times, Mr. Nadeau was a qualified individual and was capable of performing the essential functions of his job with or without one or more reasonable accommodations.

108.     Mr. Nadeau disclosed his disabilities to the Company and/or the Company was aware of Mr. Nadeau's disabilities and/or the Company regarded Mr. Nadeau as disabled.

109.     Mr. Nadeau requested disability-related reasonable accommodations that would have assisted him in performing the essential functions of his job. These requested reasonable accommodations included, but were not limited to, being allowed to utilize a medical leaves and time off from work to treat his disabilities.

110.     The Company denied some or all of the reasonable accommodations requested by Mr. Nadeau, including his requests for leave by terminating Mr. Nadeau directly after taking leave.

111.     The Company and its agents failed to engage in an interactive dialogue related to some or all of Mr. Nadeau's reasonable accommodation requests.

112.     Mr. Nadeau's requested disability-related accommodations did not pose an undue burden on the Company.

113.     The Company, by and through its agents, discriminated against Mr. Nadeau due to his disabilities by subjecting Mr. Nadeau to adverse actions, including, but not limited to, subjecting Mr. Nadeau to a harassing and otherwise hostile work environment including discriminatory comments and disparate treatment by excluding Mr. Nadeau from meetings and not giving him aid when he asked, and/or terminating Mr. Nadeau's employment.

114.     The Company acted with malice and/or with reckless indifference to the federally protected rights of Mr. Nadeau.

115.     As a direct and proximate result of the Company's violation of the ADA, Mr.

Nadeau has suffered and continues to suffer damages, including, but not limited to, lost

compensation and benefits, reduced earning capacity, pain and suffering, loss of enjoyment of

life, and emotional damages.

116.     The Plaintiff seeks all damages to which he is entitled, including, but not limited

to, lost compensation and benefits (including, but not limited to, back pay and front pay),

diminished earning capacity, injury to reputation, other monetary damages, compensatory

damages (including, but not limited to, future pecuniary losses and other nonpecuniary losses),

punitive damages, attorneys' fees, interest, and costs.


**COUNT III**

**(Disability Discrimination and Failure to Accommodate in Violation of Conn. Gen. Stat. §
46(a)-60)**

**Plaintiff v. Defendant**

117.     The Plaintiff incorporates all paragraphs above and below as if set forth fully

herein.

118.     Mr. Nadeau's diverticulitis is a physical impairment that substantially limits one

or more of his major life activities, including, but not limited to, eating and digesting.

Additionally, Mr. Nadeau's diverticulitis also substantially limited one or more major bodily

functions, including, but not limited to, Mr. Nadeau's digestive function.   Accordingly, at all

relevant times, Mr. Nadeau was disabled under Connecticut General Statute § 46(a)-60.

119.     Mr. Nadeau's minor depressive disorder is a physical impairment that

substantially limits one or more of his major life activities, including, but not limited to, social

interactions, maintaining his energy levels and his ability to control his emotions. Additionally,

Mr. Nadeau's minor depressive disorder also substantially limited one or more major bodily functions, including, but not limited to, Mr. Nadeau's neurological and emotional functions. Accordingly, at all relevant times, Mr. Nadeau was further disabled under Connecticut General Statute § 46(a)-60.

120.    Mr. Nadeau's generalized anxiety disorder is a physical impairment that substantially limits one or more of his major life activities, including, but not limited to, social interactions, maintaining his energy levels and his ability to control his emotions. Additionally, Mr. Nadeau's generalized anxiety disorder also substantially limited one or more major bodily functions, including, but not limited to, Mr. Nadeau's neurological and emotional functions. Accordingly, at all relevant times, Mr. Nadeau was further disabled under Connecticut General Statute § 46(a)-60.

121.    The Company was an employer as defined by state anti-discrimination laws, including Connecticut General Statute § 46(a)-60.

122.    At all relevant times, Mr. Nadeau was a qualified individual and was capable of performing the essential functions of his job with or without one or more reasonable accommodations.

123.    Mr. Nadeau disclosed his disabilities to Defendant and/or Defendant was aware of Mr. Nadeau's disabilities and/or Defendant regarded Mr. Nadeau as disabled.

124.    Mr. Nadeau requested disability-related reasonable accommodations that would have assisted him in performing the essential functions of his job. These requested reasonable accommodations included, but were not limited to, being allowed to utilize medical leaves and time off from work to treat his disabilities.

125.    The Company denied some or all of the reasonable accommodations requested by Mr. Nadeau, including his requests for leave by terminating Mr. Nadeau directly after taking leave.

126.    Defendant failed to engage in an interactive dialogue related to some or all of Mr. Nadeau's reasonable accommodation requests, mocking Mr. Nadeau for requesting reasonable accommodations.

127.    Mr. Nadeau's requested disability-related accommodations did not pose an undue burden on Defendant.

128.    Defendant, by and through its agents, discriminated against Mr. Nadeau due to his disabilities by subjecting Mr. Nadeau to adverse actions, including, but not limited to, subjecting Mr. Nadeau to a harassing and otherwise hostile work environment including discriminatory comments and disparate treatment by excluding Mr. Nadeau from meetings and not giving him aid when he asked and/or terminating Mr. Nadeau's employment.

129.    Defendant's actions were wanton, malicious, and/or oppressive.

130.    Defendant acted willfully and/or with reckless disregard to the state protected rights of Mr. Nadeau.

131.    As a direct and proximate result of the Defendant's violation of Connecticut General Statute § 46(a)-60, Mr. Nadeau has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

132.    The Plaintiff seeks all damages to which he is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), diminished earning capacity, injury to reputation, other monetary damages, compensatory

damages (including, but not limited to, future pecuniary losses and other nonpecuniary losses),
damages for emotional distress (including, but not limited to, damages for emotional pain,
suffering, inconvenience, mental anguish, and loss of enjoyment of life), punitive damages,
attorneys' fees, interest, and costs.

## COUNT IV

### (Age Discrimination in Violation of the Age Discrimination in Employment Act) Plaintiff v. Defendant

133.    The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

134.    During all relevant times, Mr. Nadeau was over the age of 40.

135.    During all relevant times, the Company was an employer under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621, et seq. (hereinafter, "ADEA") because the Company employed 20 or more individuals for 20 or more calendar weeks during the relevant calendar years.

136.    The Company, by and through its agents, harassed and discriminated against Mr. Nadeau with respect to his compensation, terms, conditions, and/or privileges of employment, because of Mr. Nadeau's age and/or because Mr. Nadeau was an older disabled individual ("age plus" discrimination).

137.    More specifically, the Company subjected Mr. Nadeau to adverse actions, including, but not limited to, subjecting Mr. Nadeau to a harassing and otherwise hostile work environment including discriminatory comments and disparate treatment by excluding Mr. Nadeau from meetings and not giving him aid when he asked, and/or terminating Mr. Nadeau's employment because Mr. Nadeau was over 40 years old and/or because of Mr. Nadeau's age.

138.     The Company acted with willful indifference to the federally protected rights of Mr. Nadeau.

139.     As a direct and proximate result of the Company's violations of the ADEA, Mr. Nadeau has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, interest on lost compensation and benefits, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

140.     Mr. Nadeau seeks all damages to which he is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), other monetary damages, compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), liquidated (i.e. double) damages, interest, attorneys' fees, and costs.

**COUNT V**

**(Age Discrimination in Violation of Conn. Gen. Stat. § 46(a)-60)**

**Plaintiff v. Defendant**

141.     The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

142.     The Company was an employer as defined by state anti-discrimination laws, including the Connecticut General Statute § 46(a)-60.

143.     At all relevant times, Mr. Nadeau was over 40 years old.

144.     The Company, by and through its agents harassed and discriminated against Mr. Nadeau with respect to his compensation, terms, conditions, and/or privileges of employment,

because of Mr. M Nadeau's age and/or because Mr. Nadeau was an older disabled individual ("age plus" discrimination)..

145.    More specifically, the Company subjected Mr. Nadeau to adverse actions, including, but not limited to, subjecting Mr. Nadeau to a harassing and otherwise hostile work environment including discriminatory comments and disparate treatment by excluding Mr. Nadeau from meetings and not giving him aid when he asked, and/or terminating Mr. Nadeau's employment because Mr. Nadeau was over 40 years old and/or because of Mr. Nadeau's age.

146.    The Company's actions were outrageous, because of the Company's reckless indifference to the state protected rights of Mr. Nadeau or an intentional and wanton violation of those rights.

147.    As a direct and proximate result of the Defendant's violation of Connecticut General Statute § 46(a)-60, Mr. Nadeau has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

148.    The Plaintiff seeks all damages to which he is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), diminished earning capacity, injury to reputation, other monetary damages, compensatory damages (including, but not limited to, future pecuniary losses and other nonpecuniary losses), damages for emotional distress (including, but not limited to, damages for emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life), punitive damages, attorneys' fees, interest, and costs.

**COUNT VI**

**(Retaliation in Violation of the Americans with Disabilities Act, 42 U.S.C. §§12101, et seq.)**

**Plaintiff v. Defendant**

149.    The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

150.    Mr. Nadeau engaged in protected activity under the ADA, including, but not limited to, by (i) opposing and raising protected concerns related to disability-related harassment and discrimination; by (ii)  by requesting and/or utilizing disability-related accommodations; and by (iii) opposing and raising protected concerns related to the failure of the Company to provide one or more disability-related reasonable accommodations and/or the improper threats of retaliation for utilizing such accommodations.

151.    The Company retaliated against Mr. Nadeau for engaging in activities protected under the ADA, by subjecting Mr. Nadeau to adverse actions, including, but not limited to, subjecting Mr. Nadeau to a harassing and otherwise hostile work environment including discriminatory comments and disparate treatment by excluding Mr. Nadeau from meetings and not giving him aid when he asked, and/or terminating Mr. Nadeau's employment.

152.    The Company unlawfully coerced, intimidated, threatened, and/or interfered with Mr. Nadeau's exercising of, or enjoyment of, one or more rights granted by the ADA.

153.    The Company acted with malice and/or with reckless indifference to the federally protected rights of Mr. Nadeau.

154.    As a direct and proximate result of the Company's violation of the ADA, Mr. Nadeau has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, reduced earning capacity, other monetary harms, pain and suffering, loss of enjoyment of life, and emotional damages.

155.    The Plaintiff seeks all damages to which he is entitled, including, but not limited

to, lost compensation and benefits (including, but not limited to, back pay and front pay),

diminished earning capacity, injury to reputation, other monetary damages, compensatory

damages (including, but not limited to, future pecuniary losses and other nonpecuniary losses),

punitive damages, attorneys' fees, interest, and costs.


**COUNT VII**

**(Retaliation in Violation of the Age Discrimination in Employment Act)**
**Plaintiff v. Defendant**

156.    The Plaintiff incorporates all paragraphs above and below as if set forth fully

herein.

157.    Mr. Nadeau engaged in protected activity under the ADEA, including, but not

limited to: (i) opposing, expressing protected concerns, and/or engaging in other protected

activity regarding a hostile work environment based on age and/or (ii) opposing, expressing

protected concerns, and/or engaging in other protected activity related to the harassing and

discriminatory actions taken by the Company due to Mr. Nadeau's age, including raising

protected concerns about being subjected to disparate treatment due to his age that was worse

than, and inconsistent with, the treatment of younger employees at the Company and being

subjected to a harassing and otherwise hostile work environment.

158.    The Company retaliated against Mr. Nadeau for opposing, expressing protected

concerns, and/or engaging in other protected activity related to one or more practices made

unlawful by the ADEA, by subjecting Mr. Nadeau to a harassing and otherwise hostile work

environment including discriminatory comments and disparate treatment by excluding Mr.

Nadeau from meetings and not giving him aid when he asked, and/or terminating Mr. Nadeau's employment in whole or in part, because he engaged in protected activities.

159.    The Company unlawfully coerced, intimidated, threatened, and/or interfered with Mr. Nadeau's exercising of, or enjoyment of, one or more rights granted by the ADEA.

160.    The Company acted with malice and/or with reckless indifference to the federally protected rights of Mr. Nadeau.

161.    As a direct and proximate result of the Defendant's violations of the ADEA, Mr. Nadeau has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, interest on lost compensation and benefits, loss of earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

162.    Mr. Nadeau seeks all damages to which he is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), diminished earning capacity, injury to reputation, other monetary damages, compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), liquidated damages, attorneys' fees, interest, and costs.

**COUNT VIII**

**(Retaliation for Engaging in Protected Activity in Violation of Conn. Gen. Stat. § 46(a)-60)**

**Plaintiff v. Defendant**

163.    The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

164. Mr. Nadeau engaged in protected activity under Connecticut General Statute § 46(a)-60 including, but not limited to, (i) opposing, expressing protected concerns, and/or engaging in other protected activity regarding a hostile work environment based on age and/or (ii) opposing, expressing protected concerns, and/or engaging in other protected activity related to the harassing and discriminatory actions taken by the Company due to Mr. Mr. Nadeau's age, including raising protected concerns about being subjected to disparate treatment due to his age that was worse than, and inconsistent with, the treatment of younger employees at the Company and subjecting Mr. Nadeau to a harassing and otherwise hostile work environment.

165. Mr. Nadeau additionally engaged in protected activity under Connecticut General Statute § 46(a)-60, including, but not limited to, (i) requesting and/or utilizing reasonable accommodations, (ii) protesting the failure to provide reasonable accommodations, and (iii) raising disability- related discrimination concerns.

166. Defendant discriminated against and/or retaliated against Mr. Nadeau for engaging in activity protected under Connecticut General Statute § 46(a)-60, by subjecting Mr. Nadeau to a harassing and otherwise hostile work environment including discriminatory comments and disparate treatment by excluding Mr. Nadeau from meetings and not giving him aid when he asked, and/or terminating Mr. Nadeau's employment.

167. The Company's actions were outrageous, because of the Company's reckless indifference to the state protected rights of Mr. Nadeau or an intentional and wanton violation of those rights.

168. As a direct and proximate result of the Defendant's violation of Connecticut General Statute § 46(a)-60, Mr. Nadeau has suffered and continues to suffer damages, including,

but not limited to, lost compensation and benefits, reduced earning capacity, other monetary harms, pain and suffering, loss of enjoyment of life, and emotional damages.

169.    The Plaintiff seeks all damages to which he is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), diminished earning capacity, injury to reputation, other monetary damages, compensatory damages (including, but not limited to, future pecuniary losses and other nonpecuniary losses), damages for emotional distress (including, but not limited to, damages for emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life), punitive damages, attorneys' fees, interest, and costs.

WHEREFORE, the Plaintiff, Raymond Nadeau, respectfully requests that this honorable court:

A.  Schedule this matter for trial by jury;

B.  Find the Defendant liable on all counts;

C.  Award the Plaintiff his lost compensation and benefits (including, but not limited to, back pay and front pay);

D.  Award the Plaintiff other monetary damages, including damages for his diminished earning capacity and injury to reputation;

E.  Award the Plaintiff damages for his emotional pain, mental anguish, loss of enjoyment of life, suffering, and other emotional distress damages;

F.  Award the Plaintiff compensatory damages, including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses;

G.  Award the Plaintiff punitive damages;

H.  Award the Plaintiff his reasonable attorney's fees;

I.  Award the Plaintiff interest and costs;

J.  Award the Plaintiff all other damages to which he is entitled; and

K.  Grant such further relief as is just and equitable.

Respectfully Submitted,

RAYMOND NADEAU

By his attorneys,

THE LAW OFFICES OF WYATT &
ASSOCIATES P.L.L.C

Date: January 11, 2022                    By:   __/s/ Trevor R. Brice_____

Benjamin J. Wyatt, ct29994
BWyatt@Wyattlegalservices.com

Michael Varraso, ct30777
MVarraso@wyattlegalservices.com

Trevor R. Brice, ct30951
Trevor@Wyattlegalservices.com


The Law Offices of Wyatt & Associates,
P.L.L.C.
17 Elm Street, Suite C211
Keene, NH 03431
Telephone: (603) 357-1112
Facsimile: (603) 685-2868